AUGUSTUS PORTER, BENJAMIN BARTON, PETER B. PORTER, JAMES L. BARTON, NATHANIEL SILL AND SHELDON THOMPSON, MERCHANTS TRADING UNDER THE FIRM OF SILL, THOMPSON & CO., *versus* RICHARD SMYTH

October 11, 1824

Hunt & Larned, attorneys for plaintiffs.
Woodbridge & Lanman and John L. Leib, attorneys for defendant.
(A. G. Whitney, of counsel.)

## [OPINION ON OVERRULING MOTION FOR NEW TRIAL]

Sill Thompson & Co. vs Rich Smyth—

The application to the Court is for a New Trial,

The reasons assi[g]nd and relied on by the Counsel of Smith, are that the verdict is against evidence 2$^d$ that it is against Law and 4th & 5th that the Pltffs have not well entitled themselves in this Court, to maintain the action

The Two first reasons may be considered in one view from their Connection, and are proper matter for a Court to Consider under a motion for a new trial —

The 4th & 5th reason might, if sustainable, be more properly, urged on a motion in arrest, as it goes to the foundation of the suit, and if it is any thing, it is error, which cannot be remedied by a new Trial.

I shall therefore pass by that reason as well as the law and arguments, offered in support of it and confine my remarks to the two first reasons offered —

The facts of the Case, as appeared by the evidence before the jury are understood to be these —

Sill Thomson & Co, who are forwarding merch$^{ts}$ and reside at Buffalo, transmitted to their agent at Detroit, James Abbott, a quantity of merchandize, to deliver to John McDonnel, on condition that he should make a note to s$^d$ Sill Thompson and Co, with a good indorser, for a certain sum of money, for which they held said merchandize forward[ed] as a security or Lien — They forwarded at the time the form of a note to be executed by M$^c$Donnel — James Abbot had an interview with M$^c$Donnel and informed him of the instructions he had received from Sill Thompson & Co, and that on his Complying with the instructions, said Abbot would deliver the merchandize to M$^c$Donnel — M$^c$Donnel then enquired, if Richard Smyth would be accepted as indorser — Abbot agreed that he would be sufficient M$^r$ Abbot then drew the note made use of on trial, and delivered it to M$^c$Donnel, who left the office, and after a short time returned, with the note signed by himself and indorsed in blank by Richard Smyth, and delivered the same to M$^r$ Abbot, who thereupon delivered M$^r$ M$^c$Donnel the goods and merchandize — M$^r$ Abbot further states that at the time of the execution of the note he did not see M$^r$ Smyth nor at any time before had he any conversation with him on the subject of the note or indorsement — That shortly before the action was commenced, and after the note became due, he called on M$^r$ Smyth with the note and informed him that Mess$^{rs}$ Sill Thompson and Co, held him responsible for the payment of the note and made a demand on him of the money — That M$^r$ Smyth did not deny

his liability to pay the note but is not understood at that time to have made an assumption or promise

Shortly before the Trial the Attorneys of the Pltffs filled up the indorsement on the back of the note, over the name of M$^r$ Smith which until that time was in Blank, so as to make him a guarantor of the payment of the note, unconditionally — Sill Thompson & Co the payees of the note did not indorse the note, nor did they on trial prove any demand on M$^c$Donnel, or notice to Smyth of the non payment until the time M$^r$ Abbot called on him as above

The evidence of M$^r$ Abbot in support of the foregoing facts, was permitted to go to the Jury by the Court, altho resisted by the defendants Counsel, and on it the jury found the verdict, which is now moved to be set aside —

The defendants Counsel, in support of their motion, Contend, that the indorsement on the back of the note, is not filled up in Conformity with M$^r$ Smyths undertaking or legal liability — That he was liable only as second indorser and that the Drawers of the note should themselves have indorsed the note, before they could have made him liable as second indorser — And as such 2$^d$ indorser, he was entitled to notice, according to the rules of the Law merchant.

It is evident, that the drawers of the note might have made him a second indorser, and have subjected him to all the liability of a 2$^d$ indorser, if they had thought proper so to do—And in that case he would have been entitled to notice of non pay$^t$ &$^c$

But in the present case the Pltffs did not elect to bring the Defendant within the Law merchant by making him a second indorser — and for the best of reasons — That Course would have destroyed his liability for the pay$^t$ of the note so far as regarded Sill Thompson & Co and it plainly appears by M$^r$ Abbotts Testimony, that their object was to obtain responsible security for the pay$^t$ of the money to themselves —

I think from the authorities that have been read, that the pltffs were not obliged to pursue the Course suggested by the defendants Counsel — I think they had the election within themselves, either to bring the defendant within the Law merchant, or to pursue the Course they have done —

The signing in blank gives to the parties receiving the paper so signed great powers over the fortune of the writer — It may become a Draft, a Note of hand, an indorsement or a Letter of Credit — The note in the present instance being filled up at the time it was indorsed, restricted the Pltffs in the use of the name to the subject matter of the note — The Pltffs have so considered their authority over the indorsement, and have so filled it up —

It is filled up as a special undertaking or Contract by M$^r$ Smyth to pay Sill Thompson & Co the amount of said note at all events and as an original undertaking — The Pltffs were under the authorities read, warranted, to consider M$^r$ Smyths Legal liability to be that of an original undertaking, and so shape their indorsement, as might answer their purpose —

But the mere filling up the indorsement of itself does not charge the def$^t$ — It is like other special Contracts — The Jury must have evidence in support of the undertaking, on which they are to find the facts argued — I cannot however assent to the correctness of the defendants argument when he contends, that positive evidence of the actual agreement of the parties at the time of the agreement made, must be given — The facts of the agreement must be made out at the trial, by such evidence as may be satisfactory with the jury to Convince them of the existence of the Contract — The same discription of evidence as applies in support of other special Contracts, would equally well apply in the present instance —

It is competent for a Jury to infer a Contract from facts found and circumstances, connected with those facts, from which they may draw their conclusions — The Court have no other Controul of the evidence, but to judge of its Competency and either to give or withhold it from the jury — When once properly with the jury it is their province to weigh and apply it to the facts —

If the Court suffer illegal or improper evidence to go to the jury, it has always been held a good Cause for a new trial —

But in the present Case I do not consider the Court to have erred, in permitting the evidence of M$^r$ Abbot to go to the Jury — And when so possessed of his Testimony, it was their province to apply it to the Case and to draw their conclusion from it —

Under that Testimony, as it appears they had no other, they have found for the Pltff and in so doing have found the Contract according as set forth in the indorsement — And as one of the Court I cannot say the jury found wrong, nor do I discover, that any injustice is done to the defendant — It may operate a loss to the defendant in case M$^r$ McDonnel should prove unable to indemnify him by pay$^t$ of the demand and Costs — But if a loss is to fall on the Pltffs or M$^r$ Smith both being innocent persons in the transaction, it would more properly, light on M$^r$ Smyth as he gave the credit, which the plaintiffs refused to do —

The Court are bound to lean in favor of a verdict, and to support it if it is in conformity with the real substantial justice of the Case,— It is evident that M$^r$ Smith became and intended to become surety for the debt — It can be of no consiquence as to the justice of the case, in what manner he is charged so that he is not made accountable for more money than he guaranteed — There can be no good reason assigned for turning the Pltff round

to a new action on the merits, altho another mode of action might be more technical.

It is not stated that the Court misdirected the jury in matters of Law — Had the exception been taken, and should appear to the Court upon a Careful examination that the Law had been mistaken, It would be incumbent on the Court to rectify the mistake by a new trial —

The Court are not apprised that any new evidence, upon the merits has been discovered since the last trial, altho such fact is stated as one of the reasons assigned for a new trial —

Taking into view the whole case and duly considering the arguments of Counsel as well as the authorities read at the Bar, I am of opinion, that neither the law or the Justice of the Case, require the Court to grant a new Trial.

## [MEMO. OPINION ON MOTION IN ARREST OF JUDGMENT]

Sill & others vs. Smith
M° in arrest

If A & B sue C. on a note made by C to B — The Pltffs should be non-suited — Because the Contract offered in evidence is not the Contract declared on —

If A sues B on a note made by B & C he cannot recover ag$^t$ B without joining C — This applies to a Joint note and not a joint and several undertaking —

That there is a Nonjoinder, in this that Two of the parties are not named

That there is a misjoinder in this that James L. Barton, was not one of the Co.

That there is a variance between the writ and Declaration — in this the writ states 800 damages and the dec$^l$ 1000 damages —

Misjoinder & nonjoinder alledged is Cured by the 6 Art$^l$ of the statute of Jeoffails —

I am of opinion that the M° be overruled  Not considering the same supported.